UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division

_____

IN RE:                                                    Chapter 11

     PETER G. BALLAS, II,                        Bankruptcy No. 09-12545-EPK

           Debtor.

_____

**[PROPOSED] DISCLOSURE STATEMENT**

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCE OR REJECTION MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.**

## I. INTRODUCTION

Peter G. Ballas, II, the Debtor, provides this Disclosure Statement to all of the Debtor's known creditors in order to disclose that information deemed by him to be material, important and necessary for the creditors to arrive at a reasonable informed decision in exercising their right to vote for acceptance of the Plan of Reorganization (hereinafter the "Plan"), filed by him with the Bankruptcy Court. A copy of the Plan accompanies this Statement.

The United States Bankruptcy Code provides, as a general rule, that in order for a Plan of Reorganization to be deemed accepted, each class of the claims must accept the Plan. A class of creditors whose rights are impaired and altered under the Plan is deemed to have accepted the Plan if two-thirds in dollar amount and one-half in number of those creditors in that class holding allowed claims who cast votes vote in favor of the Plan.

A class of claims which is not affected under the Plan is deemed to have accepted the Plan and need not vote.

In the event the Plan is not accepted by at least two-thirds in dollar amount and more than one-half in number of the creditors of any impaired class, Debtor, under §1129(b) of the Bankruptcy

Code, may request the Court to confirm the Plan anyway. The Court, in such a case, will confirm the Plan if all requirements for confirmation set forth in the Bankruptcy Code except acceptance by one or more classes of creditors are met and the Court finds the Plan to be "fair and equitable" to the nonaccepting classes. If the Plan is not accepted by all classes, the Debtor might be liquidated under Chapter 7 of the Bankruptcy Code. In that event, the Debtor's assets would be liquidated and distributed to the creditors in accordance with their statutory priority after the payment of all costs of administration.

The cost of distributing the Plan and this Disclosure Statement, as well as the costs, if any, of soliciting acceptances will be borne by the Debtor. In addition, the Debtor has retained the services of the law firm of Reizes Law Firm, Chartered in connection with the preparation of the Plan. However, fees for legal services are payable only upon approval by the Bankruptcy Court after Notice of Hearing is given to all creditors and other interested parties.

NO REPRESENTATIONS CONCERNING THE DEBTOR (PARTICULARLY AS TO HIS FUTURE INCOME OR VALUE OF HIS PROPERTY ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE WHICH ARE OTHER THAN AS CONTAINED IN THIS STATEMENT SHOULD NOT BE RELIED UPON BY YOU, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR AND THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.

II. BACKGROUND

The Debtor herein, Peter G. Ballas, II, resides in Gulf Stream, Palm Beach County, Florida. The Debtor is engaged in the practice of medicine as an employee and the owner of Peter G. Ballas

II, P.A., which has its offices in Boca Raton, Palm Beach County, Florida.

The Debtor's economic problems are, in the main, the result of the economic downturn which reduced demand for dermatological surgery and other procedures and cosmetic treatment, the downturn in property values in Florida and Utah, prohibiting refinancing, and disputes and litigation concerning trusts of which he is a beneficiary, causing delays in distribution.

Since filing his Chapter 11 petition, Debtor has made substantial efforts to economize the medical practice of his professional association and has been successful in bringing down his overhead.  Particular efforts have been concentrated in reducing payroll and rent expense.

It is impossible to predict the exact payments required to fund the Plan because of the undetermined tax claims.  Nevertheless, Debtor projects gross income of $16,000.00 per month, increasing at 5% per annum,.  These forecasts are substantiated by the monthly operating reports. The 2008 cash operating income of Dr. Ballas was $225,000.00.  In addition, Debtor has listed his Utah and Florida residences for sale.  When both are sold there should be adequate funds to pre-pay all the plan payments except those relating to the Chicago property.

For the foregoing reasons, the Debtor believes that he is capable of future operations on a profitable basis which operations will be sufficient to enable him to make the payments proposed under his Plan of Reorganization.

## III.  THE PLAN OF REORGANIZATION

The Plan provides for the division of the claims of the creditors and interest holders herein into eleven separate and distinct classes. Class I and Class II creditors are tax creditors.  As to Class I creditors, allowed, secured claims shall be paid pro rata to the extent of the value of the underlying real estate pursuant to 11 U.S.C. § 502(b)(3) with interest at the prime rate as of the effective date plus one percent in monthly fixed installments over 120 months. Unsecured non-priority tax creditors will be paid when the properties as to which they related are sold.

The Plan provides for other general secured creditors as to those properties being retained, to be paid in full by paying equal installments of principal amortized over 20 years with interest at the prime rate plus one percentage point as of the effective date.  General unsecured creditors will

be paid five percent of their allowed claims over ten years, in equal annual installments without interest.

Debts incurred after the filing of the petition by the Debtors under Chapter 11 and during the pendency of the reorganization proceeding shall be entitled to priority of payment over pre-existing debts. The Court shall retain jurisdiction to see that the terms of the Plan are carried out and to pass upon, hear and determine all claims against the Debtor. The Debtor will be entitled to modify the terms of the Plan, subject to Court approval, but without prior notice to creditors and interest holders provided the terms of the amendment are as at least as favorable to the creditors and interest holders as the original Plan. Priority claims, including income tax claims are now estimated to total between $200,000. and $400,000. To the extent there are insufficient funds to pay attorneys fees at confirmation, Debtor's counsel has agreed to accept post confirmation installment payments. The post petition debt consists of administrative claims, being attorneys fees, accountant fees and real estate taxes. The Debtor has not borrowed any sums requiring court approval.

Specifically, the proposed Plan provides as follows:

ARTICLE III

CLASSIFICATION OF CLAIMS AND INTERESTS

Claims against the Debtor and Interests in the Debtor are hereby classified as follows:

1. Class I shall consist of creditors who have tax claims secured by real property.

2. Class II shall consist of creditors who have priority unsecured tax claims.

3. Class III shall consist of the creditor holding a first mortgage lien on the premises owned by Debtor situate at 159 East Walton Place #12D, Chicago, IL 60611, which is believed by Debtor to be Wells Fargo, with a claim in the amount of $686,000.00.

4. Class IV shall consist of the creditors holding a first mortgage lien on the premises owned by Debtor situate at 49 Silver Dollar Drive, Park City, Utah, which is believed by Debtor to be Wells Fargo Home Mortgage, with a claim in the amount of $1,220,222.00.

5. Class V shall consist of the creditor holding a first mortgage lien on the premises

4

owned by Debtor situate at 3960 North Ocean Blvd, # 1, Gulf Stream,  FL 33483 which is believed by the Debtor to be Wells Fargo Home Mortgage with a claim in the amount of $1,000,000.00.

6.   Class VI shall consist of the creditor holding a second  mortgage lien on the premises owned by Debtor situate at 159 East Walton Place #12D, Chicago, IL 60611, which is believed to be Wells Fargo Bank, N.A., with a claim in the amount of $94,509.23.

7.   Class VII shall consist of the creditor holding a second mortgage lien on the premises owned by Debtor situate at 49 Silver Dollar Drive, Park City, Utah, which is believed to be Wells Fargo Bank, N.A., with a claim in the amount of $1,117,712.85.

8.   Class VIII shall consist of the of creditor holding a second mortgage lien on the premises owned by Debtor situate at 3960 North Ocean Blvd., #1, Gulf Stream, FL 33483, which is believed by the Debtor to be Wells Fargo Bank, N.A. with a claim in the amount of $279,989.92. having unsecured claims.

9.   Class IX shall consist of all other secured claims.

10. Class X shall consist of the creditors having unsecured claims.  Included in this class are unsecured deficiency claims of creditors asserting secured claims.

11. Class XI shall consist of the Interests of the Debtor.

ARTICLE IV

TREATMENT OF CLAIMS NOT IMPAIRED UNDER THE PLAN

Class IX, the Debtor, shall retain his interests without alteration; they are not impaired by the Plan.

ARTICLE V

TREATMENT OF CLAIMS THAT ARE IMPAIRED UNDER THE PLAN

Classes I through X are impaired within the meaning of Bankruptcy Code § 1124 and shall be treated as follows:

1.   Class I and II Creditors, the taxing authorities, will be paid in full, pro-rata, but to

a maximum amount  as to each property of the Debtor, of the value of the properties secured by their liens, or subject of their priority unsecured claims, as hereinafter set forth without penalties but with interest at the prime rate plus one percentage point as at the effective date, for the post confirmation period in equal monthly installments for 120 months, as to those properties being retained.  All in personam claims against Debtor are extinguished.  Debtor shall be credited with any post-petition payments on account of tax.

2.      Classes III through IX claims will be recast into 20 year mortgages with equal monthly payments of principal and interest at the prime rate plus one percentage point as at the effective date for the entire fixed term of the recast mortgages, with the first payment commencing 30 days after the effective date.

THE FOREGOING IS A BRIEF SUMMARY OF THE PLAN AND SHOULD NOT BE RELIED ON FOR VOTING PURPOSES. CREDITORS AND INTEREST HOLDERS ARE URGED TO READ THE PLAN IN FULL AND TO CONSULT WITH COUNSEL, OR WITH EACH OTHER, IN ORDER TO FULLY UNDERSTAND THE PLAN. THE PLAN IS COMPLEX INASMUCH AS IT REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT, AND AN INTELLIGENT JUDGMENT CONCERNING SUCH PLAN CANNOT BE MADE WITHOUT UNDERSTANDING IT.

IV. BENEFITS OF THE PLAN OVER LIQUIDATION

The Plan is based upon the Debtor's belief that the present forced liquidation value of the Debtor's assets would be sufficient only to pay secured claims of the taxing authorities without payment in full to the secured creditors of their full mortgage debts because of the present real estate market for South Florida homes and the resort second homes in Utah.  Accordingly, a forced liquidation through a Chapter 7 bankruptcy liquidation proceeding, or otherwise, would, in the Debtor's opinion, result in no recovery by unsecured creditors. The intent of the Plan is to enable the Debtor to continue his medical practice thereby, hopefully, generating sufficient additional moneys to make payments to creditors which could not be made through liquidation of the Debtor's assets.

Included herein is a liquidation balance sheet showing the Debtor's best estimation of what could be recovered upon the Debtor's assets in liquidation and what the resulting effect on creditors would be.  As is apparent, unsecured creditors would receive nothing on liquidation.  A recovery by unsecured creditors can be achieved only through the Debtor's continued operations under a confirmed Plan.

### V. FUNDING OF PLAN

The Debtor intends to fund his Plan of Reorganization from the continued operation of his medical practice, and the sale of the Gulfstream, Florida, and Park City,Utah properties. The Court has approved the retention of a real estate brokers to market the properties.

### VI. FINANCIAL INFORMATION

1.  The Debtor has no financial statements as of the filing date of the petition.  However, his operating statements since filing are current and on file with the Court. In Debtor's opinion, the operating reports fairly and accurately represent the condition of the Debtor as of May 20, 2009, and do not substantially differ from the situation as of the filing date except for cash on hand, which has increased because of a distribution from one of the trusts of which he is a beneficiary.  Debtor is aware of no other material change which would significantly affect the information contained on the said statements as of the present date.

2.  Here follows a liquidation balance sheet which reflects the Debtor's best estimate as to the amount recoverable from the Debtor's assets on liquidation and the application of the liquidation proceeds to indebtedness of the Debtor:

| Property | Value |
|---|---|
| Real Estate @ 70% of scheduled values | $4,409,300.00 |
| Personal Property at liquidation | 100,000.00 |
| TOTAL REALIZED AT LIQUIDATION | $4,509,300.00 |
| SECURED AND PRIORITY TAX CLAIMS | 400,000.00 |
| MORTGAGE CLAIMS | 5,208, 655.00 |
| ADMINISTRATIVE CLAIMS | 100,000.00 |

NEGATIVE BALANCE AVAILABLE FOR
GENERAL UNSECURED CLAIMS                                    ($1,199,355.00)

Projected income is expected to make the Plan feasible because the Debtor expects his income to continue and to be devoted to plan payments.

## VII.  CONSIDERATIONS RELATING TO CONFIRMATION OF PLAN

In order for the proposed Plan to be confirmed by the Court, it will be necessary for the Debtor, as the Plan's proponent, to solicit acceptances of the Plan from the members of the various classes of Claimants whose Claims have been impaired.  Court approval of this Disclosure Statement is required prior to the Debtor's solicitation of acceptances (Section 1123(b) of the Code).

All non-administrative, unsecured and non-priority Claimants are impaired by the terms of the Plan, and it will, therefore, be necessary to solicit and obtain acceptances from such claimants.

Under Section 1126(c) of the Code, a class of claims has accepted a Plan if such plan has been accepted by Creditors that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims of such Class held by Creditors that had accepted or rejected such Plan. There is, of course, a good faith requirement.  Section 1126(e) of the Code permits the Court, upon request and after notice and a hearing, to designate any entity whose acceptance or rejection was not in good faith or was not solicited or procured in good faith.  Entities which are found to have accepted or rejected a Plan not in good faith are excluded in the computation of votes required under the Bankruptcy Code.

If acceptance of the Plan cannot be obtained, it may be necessary for the Debtor or for the Creditors or any other interested party to propose a new Plan, which Plan may be a liquidation rather than a reorganization plan.

Other interested parties may also file competing plans.

## VIII. CONCLUSION

The foregoing represents what the Debtor believes to be a fair and accurate representation of the general terms of the proposed Plan of Reorganization and the Debtor's current financial

8

condition.  ALL CREDITORS ARE CAUTIONED THAT THE ABILITY OF THE DEBTOR TO PERFORM HIS OBLIGATIONS UNDER THE PLAN OF REORGANIZATION IS UNCERTAIN AND, ACCORDINGLY, THERE CAN BE NO ASSURANCE GIVEN THAT ALL OF THE PAYMENTS PROPOSED TO BE MADE WILL IN FACT BE MADE BY THE DEBTOR. Nonetheless, Debtor believes that the proposed Plan of Reorganization offers the best chance of recovery by all classes of creditors in this case and that, accordingly, it would be in the interest of all classes of creditors to vote in favor of the proposed Plan.

Dated:  Boynton Beach, FL
         June 15, 2008

_/s/ Peter G. Ballas, II_
 Peter G. Ballas, II


REIZES LAW FIRM CHARTERED


By:  _/s/ Leslie N. Reizes_
       Leslie N. Reizes
Attorneys for Debtors
1200 South Federal Highway, Suite 301
Boynton, Beach, FL 33435
Tel:  (561) 736-2600
Fax: (561) 736-2700

9