UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division

_____

IN RE:                                                                                  Chapter 11

    PETER G. BALLAS, II,                                             Bankruptcy No. 09-12545-EPK

    Debtor.

_____

**SECOND AMENDED [PROPOSED] DISCLOSURE STATEMENT**

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCE OR REJECTION MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.**

    I. INTRODUCTION

    1. Peter G. Ballas, II, the Debtor, provides this Disclosure Statement to all of the Debtor's known creditors in order to disclose that information deemed by him to be material, important and necessary for the creditors to arrive at a reasonable informed decision in exercising their right to vote for acceptance of the First Amended Plan of Reorganization (hereinafter the "Plan"), filed by him with the Bankruptcy Court. A copy of the Plan accompanies this Statement. The original Plan was modified primarily to reflect a change in the treatment of tax claims, which has been agreed to by the IRS. Debtor has now filed all required income tax returns.

    2. The United States Bankruptcy Code provides, as a general rule, that in order for a Plan of Reorganization to be deemed accepted, each class of the claims must accept the Plan. A class of creditors whose rights are impaired and altered under the Plan is deemed to have accepted the Plan if two-thirds in dollar amount and one-half in number of those creditors in that class holding allowed claims who cast votes vote in favor of the Plan.

    3. A class of claims which is not affected under the Plan is deemed to have accepted the Plan and need not vote.

4. In the event the Plan is not accepted by at least two-thirds in dollar amount and more than one-half in number of the creditors of any impaired class, Debtor, under §1129(b) of the Bankruptcy Code, may request the Court to confirm the Plan anyway. The Court, in such a case, will confirm the Plan if all requirements for confirmation set forth in the Bankruptcy Code except acceptance by one or more classes of creditors are met and the Court finds the Plan to be "fair and equitable" to the nonaccepting classes. If the Plan is not accepted by all classes, the Debtor might be liquidated under Chapter 7 of the Bankruptcy Code. In that event, the Debtor's assets would be liquidated and distributed to the creditors in accordance with their statutory priority after the payment of all costs of administration.

5. The cost of distributing the Plan and this Disclosure Statement, as well as the costs, if any, of soliciting acceptances will be borne by the Debtor. In addition, the Debtor has retained the services of the law firm of Reizes Law Firm, Chartered in connection with the preparation of the Plan. However, fees for legal services are payable only upon approval by the Bankruptcy Court after Notice of Hearing is given to all creditors and other interested parties.

NO REPRESENTATIONS CONCERNING THE DEBTOR (PARTICULARLY AS TO HIS FUTURE INCOME OR VALUE OF HIS PROPERTY ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE WHICH ARE OTHER THAN AS CONTAINED IN THIS STATEMENT SHOULD NOT BE RELIED UPON BY YOU, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR AND THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.

## II. BACKGROUND

6. The Debtor herein, Peter G. Ballas, II, resides in Gulf Stream, Palm Beach County, Florida. The Debtor is engaged in the practice of medicine as an employee and the owner of Peter G. Ballas II, P.A., which has its offices in Boca Raton, Palm Beach County, Florida. A copy of his curriculum vitae was attached as Exhibit "A" to his first amended disclosure statement which is incorporated by reference.

### Events Leading to Chapter 11 Filing

7. The Debtor's economic problems are, in the main, the result of the economic downturn which reduced demand for dermatological surgery and other procedures and cosmetic treatment, the downturn in property values in Florida and Utah, prohibiting refinancing, and disputes and litigation concerning trusts of which he is a beneficiary, causing delays in distribution. These factors led to his filing the petition. A distribution from his father's irrevocable trust is expected to follow a favorable result of an appeal in the Ohio Supreme Court, but the trust is irrevocable and contains spendthrift provisions which means that trust assets are not available to creditors. A copy of the trust agreement was annexed as Exhibit "B" to his first amended disclosure statement which is incorporated by reference.

### Significant Events During the Bankruptcy Case

8. The Debtor submitted an application to employ Leslie N. Reizes, Reizes Law Firm, Chartered as attorney to represent him in this case. Application was made to employ John J. Matteis, CPA of the firm Matteis & Christopher, P.A. as accountant. Applications were also submitted to employ Barbara Whittaker/ The Corcoran Group as Florida real estate broker and Chris Eberlein/ Keller Williams Park City Real Estate as Utah real estate broker. All of these applications were approved by the Court.

9. An adversary proceeding was filed when the Trustee under the deed of trust of the Utah property, despite notice of the Chapter 11 filing, advised it would proceed with foreclosure. A motion for a preliminary injunction was resolved by submission of an agreed order enjoining defendants from proceeding with foreclosure until further order of the Court.

10. Since that time, the various firms representing Wells Fargo, have been replaced by Carlton Fields, which firm has been constantly apprised of the efforts to market the property subject of the Wells Fargo liens. The adversary is now on hold because the secured lender is not proceeding in violation of the automatic stay and in fact is cooperating with Debtor's efforts to sell the properties realizing that they will bring more at a private sale than at a foreclosure auction.

11. Key Bank, as a secured creditor, filed a motion to lift the stay on assets it was holding and liquidated the assets. It now has a disputed claim for a small balance. Neither the lifted stay nor the adversary proceeding is material to Debtor's prospects for successful reorganization.

12. Since filing his Chapter 11 petition, Debtor has made substantial efforts to economize the medical practice of his professional association and has been successful in bringing down his overhead. Particular efforts have been concentrated in reducing payroll and rent expense. Payroll has been reduced by 40%, rent has been negotiated downward, but the income of the practice is down by 50%.

13. None of the trust litigation or the litigation with Wells Fargo is material to the feasibility of reorganization, unless Debtor and his sisters are successful in their case, and the trustee makes a distribution to the Debtor, which would be expected to be about $800,000. There is no guaranty of the ultimate success of the litigation, and even if successful whether a distribution to Debtor will be made.

14. It is impossible to predict the exact payments required to fund the Plan because of the undetermined tax claims. Nevertheless, Debtor projects gross income of $16,000.00 per month, increasing at 5% per annum. The most recent monthly operating report is annexed as Exhibit "C" to his first amended disclosure statement which is incorporated by reference. These forecasts are substantiated by the monthly operating reports. The 2008 cash operating income of Dr. Ballas was $225,000.00.

15. Debtor sold his Utah residence on February 22, 2010, which resulted in the payoff of the first, second, and third liens, all in accordance with an order of this Court under Code § 363. Debtor believes that a successful reorganization depends in great measure on the sale of his Florida

residence.  This property is currently listed for sale with a Court-appointed broker at a price of $1,500,000.00.  When this property is sold there should be adequate funds to pre-pay all the plan payments except those relating to the Chicago property.  However, unless the real estate is sold, the plan payments cannot be made. For the foregoing reasons, the Debtor believes that he is capable of future operations on a profitable basis which operations will be sufficient to enable him to make the payments proposed under his Plan of Reorganization.

### III.  THE PLAN OF REORGANIZATION

16.    The Plan provides for the division of the claims of the creditors and interest holders herein into eleven separate and distinct classes. Class I and Class II creditors are tax creditors.  As to Class I creditors, allowed, secured claims shall be paid pro rata to the extent of the value of the underlying real estate pursuant to 11 U.S.C. § 502(b)(3) with interest at the applicable statutory rate as of the effective date in monthly fixed installments over 60 months. Secured  non-priority tax creditors will be paid when the properties as to which they relate are sold.

17.    The Plan provides for other general secured creditors as to those properties being retained, to be paid in full by paying equal installments of principal amortized over 20 years with interest at the prime rate plus one percentage point as of the effective date.  General unsecured creditors will be paid five percent of their allowed claims over ten years, in equal annual installments without interest.

18.    Debts incurred after the filing of the petition by the Debtors under Chapter 11 and during the pendency of the reorganization proceeding shall be entitled to priority of payment over pre-existing debts. The Court shall retain jurisdiction to see that the terms of the Plan are carried out and to pass upon, hear and determine all claims against the Debtor.  The Debtor will be entitled to modify the terms of the Plan, subject to Court approval, but without prior notice to creditors and interest holders provided the terms of the amendment are as at least as favorable to the creditors and interest holders as the original Plan.  Priority claims, including income tax claims are now estimated to total approximately $202,000.00. To the extent there are insufficient funds to pay attorneys fees at confirmation, Debtor's counsel has agreed to accept post confirmation installment payments. The

post petition debt consists of administrative claims, being attorneys fees, accountant fees and real estate taxes. The Debtor has not borrowed any sums requiring court approval.

    19. Specifically, the proposed Plan provides as follows:

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

Claims against the Debtor and Interests in the Debtor are hereby classified as follows:

    A. Class I shall consist of creditors who have tax claims secured by real property.

    B. Class II shall consist of creditors who have priority unsecured tax claims.

    C. Class III shall consist of the creditor holding a first mortgage lien on the premises owned by Debtor situate at 159 East Walton Place #12D, Chicago, IL 60611, which is believed by Debtor to be Wells Fargo, with a claim in the amount of $686,000.00.

    D. Class IV shall consist of the creditors holding a first mortgage lien on the premises owned by Debtor situate at 49 Silver Dollar Drive, Park City, Utah, which is believed by Debtor to be Wells Fargo Home Mortgage, with a claim in the amount of $1,220,222.00 which has been paid.

    E. Class V shall consist of the creditor holding a first mortgage lien on the premises owned by Debtor situate at 3960 North Ocean Blvd, # 1, Gulf Stream, FL 33483 which is believed by the Debtor to be Wells Fargo Home Mortgage with a claim in the amount of $1,000,000.00.

    F. Class VI shall consist of the creditor holding a second mortgage lien on the premises owned by Debtor situate at 159 East Walton Place #12D, Chicago, IL 60611, which is believed to be Wells Fargo Bank, N.A., with a claim in the amount of $94,509.23.

    G. Class VII shall consist of the creditor holding a second mortgage lien on the premises owned by Debtor situate at 49 Silver Dollar Drive, Park City, Utah, which is believed to be Wells Fargo Bank, N.A., with a claim in the amount of $1,117,712.85 which has been paid.

H.  Class VIII shall consist of the of creditor holding a second mortgage lien on the premises owned by Debtor situate at 3960 North Ocean Blvd., #1, Gulf Stream, FL 33483, which is believed by the Debtor to be Wells Fargo Bank, N.A. with a claim in the amount of $279,989.92.

I.  Class IX shall consist of all other secured claims.

J.  Class X shall consist of the creditors having unsecured claims.  Included in this class are unsecured deficiency claims of creditors asserting secured claims.

K.  Class XI shall consist of the Interests of the Debtor.

## ARTICLE IV

### TREATMENT OF CLAIMS NOT IMPAIRED UNDER THE PLAN

20.  Class IX, the Debtor, shall retain his interests without alteration; they are not impaired by the Plan.

## ARTICLE V

### TREATMENT OF CLAIMS THAT ARE IMPAIRED UNDER THE PLAN

21.  Classes I through X are impaired within the meaning of Bankruptcy Code § 1124 and shall be treated as follows:

A    Class I and II Creditors, the taxing authorities, will be paid in full, pro-rata, but to a maximum amount as to each property of the Debtor, of the value of the properties secured by their liens, or subject of their priority unsecured claims, as hereinafter set forth without penalties but with interest at the statutory rate as at the effective date, for the post confirmation period in equal monthly installments for 60 months, as to those properties being retained.  All in personam claims against Debtor are extinguished.  Debtor shall be credited with any post-petition payments on account of tax.

B.    Classes III through IX claims will be recast into 20 year mortgages with equal monthly payments of principal and interest at the prime rate plus one percentage point as at the effective date for the entire fixed term of the recast mortgages, with the first payment commencing

30 days after the effective date.

THE FOREGOING IS A BRIEF SUMMARY OF THE PLAN AND SHOULD NOT BE RELIED ON FOR VOTING PURPOSES. CREDITORS AND INTEREST HOLDERS ARE URGED TO READ THE PLAN IN FULL AND TO CONSULT WITH COUNSEL, OR WITH EACH OTHER, IN ORDER TO FULLY UNDERSTAND THE PLAN. THE PLAN IS COMPLEX INASMUCH AS IT REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT, AND AN INTELLIGENT JUDGMENT CONCERNING SUCH PLAN CANNOT BE MADE WITHOUT UNDERSTANDING IT.

### IV. BENEFITS OF THE PLAN OVER LIQUIDATION

22. The Plan is based upon the Debtor's belief that the present forced liquidation value of the Debtor's assets would be sufficient only to pay secured claims of the taxing authorities without payment in full to the secured creditors of their full mortgage debts because of the present real estate market for South Florida homes and the resort second homes in Utah. The valuations of the real estate as set forth in the liquidation analysis are based on debtor's real estate brokers' opinions. The medical practice is heavily indebted and would have no value to anyone other than the debtor. Accordingly, a forced liquidation through a Chapter 7 bankruptcy liquidation proceeding, or otherwise, would, in the Debtor's opinion, result in no recovery by unsecured creditors. The intent of the Plan is to enable the Debtor to continue his medical practice thereby, hopefully, generating sufficient additional moneys to make payments to creditors which could not be made through liquidation of the Debtor's assets.

23. Included herein is a liquidation balance sheet showing the Debtor's best estimation of what could be recovered upon the Debtor's assets in liquidation and what the resulting effect on creditors would be. As is apparent, unsecured creditors would receive nothing on liquidation. A recovery by unsecured creditors can be achieved only through the Debtor's continued operations under a confirmed Plan. The Debtor's liquidation analysis is based on discounting his accountant's compilation of assets and liabilities and the projections of income from his practice, all as set forth

in composite Exhibit "E " to the Amended Disclosure Statement to his first amended disclosure statement which is incorporated by reference.

    V. FUNDING OF PLAN

24. The Debtor intends to fund his Plan of Reorganization from the continued operation of his medical practice, and the sale of the Gulf Stream, Florida, and Park City, Utah properties the latter of which has now been accomplished.. The Court has approved the retention of a real estate broker to market the Florida property.

    VI. FINANCIAL INFORMATION

25. Debtor's operating statements since filing are current and on file with the Court. In Debtor's opinion, the operating reports fairly and accurately represent the condition of the Debtor as of January 31, 2010, and do not substantially differ from the situation as of the filing date except that his income is down as a result of the South Florida economy and health issues of the Debtor. Debtor is aware of no other material change which would significantly affect the information contained on the said statements as of the present date.

26. Here follows a liquidation balance sheet which reflects the Debtor's best estimate as to the amount recoverable from the Debtor's assets on liquidation and the application of the liquidation proceeds to indebtedness of the Debtor:

| Property | Value |
|---|---|
| Real Estate @ 70% of scheduled values | $4,409,300.00 |
| Personal Property at liquidation | 100,000.00 |
| TOTAL REALIZED AT LIQUIDATION | $4,509,300.00 |
| SECURED AND PRIORITY TAX CLAIMS | 230,000.00 |
| MORTGAGE CLAIMS | 5,208,655.00 |
| ADMINISTRATIVE CLAIMS | 100,000.00 |
| NEGATIVE BALANCE AVAILABLE FOR GENERAL UNSECURED CLAIMS | ($1,029,355.00) |

27. Projected income is expected to make the Plan feasible because the Debtor expects his

income to continue and to be devoted to plan payments.

### VII.  CONSIDERATIONS RELATING TO CONFIRMATION OF PLAN

28.  In order for the proposed Plan to be confirmed by the Court, it will be necessary for the Debtor, as the Plan's proponent, to solicit acceptances of the Plan from the members of the various classes of Claimants whose Claims have been impaired.  Court approval of this Disclosure Statement is required prior to the Debtor's solicitation of acceptances (Section 1123(b) of the Code).

29.  All non-administrative, unsecured and non-priority Claimants are impaired by the terms of the Plan, and it will, therefore, be necessary to solicit and obtain acceptances from such claimants.

30.  Under Section 1126(c) of the Code, a class of claims has accepted a Plan if such plan has been accepted by Creditors that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims of such Class held by Creditors that had accepted or rejected such Plan.  There is, of course, a good faith requirement.  Section 1126(e) of the Code permits the Court, upon request and after notice and a hearing, to designate any entity whose acceptance or rejection was not in good faith or was not solicited or procured in good faith.  Entities which are found to have accepted or rejected a Plan not in good faith are excluded in the computation of votes required under the Bankruptcy Code.

31.  If acceptance of the Plan cannot be obtained, it may be necessary for the Debtor or for the Creditors or any other interested party to propose a new Plan, which Plan may be a liquidation rather than a reorganization plan.

32.  Other interested parties may also file competing plans.

33.  The amount of claims are set forth in the claims register incorporated by reference.  The bar date for filing proofs of claim has passed.  The Debtor intends to object to claims No. 1, 2, 10, 11, 12, 14, 15, 16, 18, and 19.

34.  It is estimated administrative claims will be $100,000.00.

35.  Section 1141 of the Bankruptcy code describes the effect of confirmation of the Plan.

When the Plan is confirmed the provisions are binding on the entities listed in section 1141(a), property vests in the debtor free of claims and interests. Unless after notice and a hearing the Court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the Plan until the Court grants a discharge on completion of all payments under the Plan.

36. Unless the real estate is sold, unsecured creditors will realize nothing. The real estate lenders are now fully secured, their risk is a further deterioration in the real estate markets.

37. Under Code § 1125 (a)(1) adequate information in a disclosure statement requires consideration of the complexity of the case and the information required by a hypothetical investor in the concerned class. Here nearly all of the debt is held by Wells Fargo, one of the nation's largest financial institutions, which is certainly familiar with the three properties subject of the case, and sophisticated enough to analyze the plan with the information disclosed. The other secured creditor is equally sophisticated.

38. Upon information and belief, there are no secured non-priority tax creditors. All real estate property taxes are paid to date.

39. As detailed in the First Amended Plan of Reorganization, Class X consists of the creditors having unsecured claims. Included in this class are unsecured deficiency claims of creditors asserting secured claims.

40. Exhibit "E" to the First Amended Disclosure Statement, incorporated by reference, is based on the accountant's assumption of 100% recovery whereas the liquidation analysis in the body of the Disclosure Statement assumed 70% of the scheduled values because of the current state of the real estate market and the continuing accrual of interest and expenses.

41. The valuation of Debtor's assets as listed on Schedule B is based on Debtor's opinion.

42. Debtor's medical practice has not achieved its aims since filing of the petition but Debtor is optimistic that over time these goals will be reached. None of his personal expenses is being paid by the business.

43. The trade debt of the medical practice which was guaranteed by Debtor is treated as

part of Class X because Debtor is responsible for the debt he guaranteed.

44. The Debtor is developing evidence to support his claims objections and will make the objections when the information is fully developed.

45. The Debtor has an expectancy under a now irrevocable trust which he does not have the power to revoke and accordingly the trust interest is not property of the estate.

46. The Utah property was sold sale free and clear of liens on February 22, 2010, for $3,050,000.00. The Gulf Stream, Florida, property is listed for sale with Barbara Whittaker of The Corcoran Group as disclosed in the application to employ her as Real Estate Broker. The property continues to be shown. Debtor plans to retain his Chicago residence.

47. Debtor has not been paid what he expected from his medical practice as receipts are down because the demand for cosmetic and other elective medical procedures has been reduced by current economic conditions. Additionally, during recent months he was undergoing medical evaluation and treatment that required a reduction in his work hours.

48. This Disclosure Statement contains the Debtor's best estimate of repayment potential. Any evidentiary issues are for a confirmation hearing.

49. The Bankruptcy Code provides for payment of the U.S. Trustee's fees until the case is closed.

50. The Debtor has made his best estimate as to future income but in these uncertain times cannot offer more that his best estimate which is that the secured creditors will be paid in full under the plan and the unsecured creditors will be paid something under the plan, if confirmed, and nothing if the case is dismissed or converted.

## VIII. CONCLUSION

51. The foregoing represents what the Debtor believes to be a fair and accurate representation of the general terms of the proposed Plan of Reorganization and the Debtor's current financial condition. ALL CREDITORS ARE CAUTIONED THAT THE ABILITY OF THE DEBTOR TO PERFORM HIS OBLIGATIONS UNDER THE PLAN OF

REORGANIZATION IS UNCERTAIN AND, ACCORDINGLY, THERE CAN BE NO ASSURANCE GIVEN THAT ALL OF THE PAYMENTS PROPOSED TO BE MADE WILL IN FACT BE MADE BY THE DEBTOR.  Nonetheless, Debtor believes that the proposed Plan of Reorganization offers the best chance of recovery by all classes of creditors in this case and that, accordingly, it would be in the interest of all classes of creditors to vote in favor of the proposed Plan.

Dated:  Boynton Beach, FL
        February 23, 2010

                                  */s/ Peter G. Ballas, II*
                                  Peter G. Ballas, II


REIZES LAW FIRM CHARTERED

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and that I am in compliance with the additional qualifications to practice set forth in L.R. 9010 (D) (1) and (2).


By:  */s/ Leslie N. Reizes*
      Leslie N. Reizes
Attorneys for Debtors
1200 South Federal Highway, Suite 301
Boynton, Beach, FL 33435
Tel:  (561) 736-2600
Fax: (561) 736-2700